**DAVID M.C. PETERSON**
California Bar No. 254498
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
David_Peterson@fd.org

Attorneys for Mr. Esparza-Gutierrez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 08CR0416-LAB-1 |
| Plaintiff, ) | Date: July 28, 2008 |
| ) | Time: 3:00 p.m. |
| v. ) | |
| ) | BRIEFING ON THE PROCEDURAL POSTURE |
| FRANCISCO ESPARZA-GUTIERREZ, ) | OF THE CASE |
| Defendant. ) | |

At the July 28, 2008 hearing, this Court requested briefing on the procedural posture of the case, and at what point, if any, recusal by this Court would become appropriate. Mr. Esparza-Gutierrez hereby files this briefing stating his position on the procedural posture of the case.

**I.**

**The Procedure Requested By Mr. Esparza.**

Mr. Esparza-Gutierrez believes that the case should proceed in the following manner, to ensure compliance with Ninth Circuit and Supreme Court case law.

//
//
//
//

1     First, this Court should determine whether the government breached its initial plea agreement. United States v. Flores-Payon, 942 F.2d 556, 560 (9th Cir.1991) (whether a plea agreement was breached is "precisely the type of claim that a district court is best situated to resolve," because such a claim is "fact-specific [and] may require an evidentiary hearing or proffer of evidence"). Under Santobello v. New York, 404 U.S. 257 (1971), a criminal defendant has a due process right to enforce the terms of his plea agreement. Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir.2003) ("[The defendant's] due process rights conferred by the federal constitution allow [him] to enforce the terms of the plea agreement").

    If this Court finds a breach of the initial plea agreement, resentencing before a different judge is appropriate. See, e.g., United States v. Mondragon, 228 F.3d 978, 981 (9th Cir. 2000) ("As we are required to do, we remand for resentencing before a different judge. . . [w]e emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutors, not on the sentencing judge") (quoting Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

    Second, this Court should determine whether the government breached its post-appeal plea agreement. Flores-Payon, 942 F.2d at 560. This is contingent upon the court deciding the issues raised in Mr. Esparza-Gutierrez' brief filed under seal on July 29, 2008.[1] If the court finds a breach of the post-appeal plea agreement, resentencing before a different judge is appropriate. See, e.g., Mondragon, 228 F.3d at 981.

    Mr. Esparza-Gutierrez does not contend that recusal is appropriate based upon his claim of breach. Mr. Esparza-Gutierrez' contention is merely that this Court should determine whether there was a breach. At that point, upon a finding that the government breached either the first plea agreement or the second, post-appeal plea agreement, it must set the case for resentencing before a different District Judge. Mr. Esparza-Gutierrez is not forum shopping, he is merely requesting that this Court follow the procedure required by binding Ninth Circuit precedent, which in turn is interpreting Supreme Court precedent. The relevant case law is discussed more fully below.

//

---

[1] Because the court requested that Mr. Esparza-Gutierrez file briefing with regard to the post-appeal breach under seal he only addresses the procedural posture vis-a-vis the first breach, at the March 24, 2008, sentencing hearing in these papers. The issue of the first breach was on appeal; however, in reliance on the government's promises in the post-appeal plea agreement, Mr. Esparza agreed that he would not oppose the government's Motion for Summary Reversal and Remand. Because of the second breach and the detrimental reliance on the government's promise, the first breach is once again properly before this Court.

## II.

## **The Law Regarding Breach of a Plea Agreement By a Prosecutor.**

**A.    Specific Performance is the Proper Remedy.**

Mr. Esparza-Gutierrez requests that this Court determine whether there has been a breach of the post-plea agreement, as is argued in this brief (with regard to the initial breach), and as is argued in the motions filed under seal on July 29, 2008. Upon a finding of breach of either plea agreement, the only remedy to the government's breach will be specific performance. This is because Mr. Esparza-Gutierrez has complied with the terms of his plea agreement, has detrimentally relied upon the government's promises. The only remedy that remains is specific performance. Where a defendant has performed his part of the agreement, specific performance is the proper remedy. Buckley v. Terhune, 441 F.3d 688, 699 (9th Cir. 2006) (only available remedy to defendant who has performed his part of the agreement is specific performance because the defendant "has paid in a coin that the state cannot refund"). In order to uphold his end of the post-appeal plea agreement, Mr. Esparza-Gutierrez consented to the a remand on only one of three issues raised on appeal. This was done in reliance upon certain promises by the government, discussed more fully in the July 29, 2008 motion filed under seal with the court. Here, "[r]escission of the plea agreement cannot repair the harm caused by the state's breach." Buckley, 441 F.3d at 699 (citing Carter v. McCarthy, 806 F.2d 1373, 1377(9th Cir.1986).

**B.    Where the Remedy Is Specific Performance, It Must Be Before a Different Judge.**

A long line of Ninth Circuit cases hold that where the government breaches a plea agreement, the proper remedy is to vacate the sentence and remand to a different judge for re-sentencing. United States v. Mondragon, 228 F.3d 978, 981 (9th Cir. 2000) ("As we are required to do, we remand for resentencing before a different judge. . . [w]e emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutors, not on the sentencing judge") (quoting Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)); United States v. Johnson, 187 F.3d 1129, 1132 (9th Cir. 1999) (Because of the government's breach, we are required to remand for re-sentencing before a different judge"); United States v. Camper, 66 F.3d 229, 233 (9th Cir.1995); United States v. Benchimol, 738 F.2d 1001 (9th Cir. 1984) ("We remand for resentencing, at which time the government will comply with its plea bargain by clearly stating its recommendation of probation with restitution and the reasons why

1   it believes that sentence is appropriate. Benchimol is entitled to be resentenced before a different judge."

2   (overturned on other grounds by United States v. Benchimol, 471 U.S. 453 (1985); United States v.

3   Camarillo-Tello, 236 F.3d 1024, 1028 (9th Cir. 2001) ("We therefore reverse and remand for re-sentencing.

4   As we are required to do, we remand the case to a different sentencing judge."); United States v. Allen, 270

5   Fed.Appx. 638 (9th Cir. 2008) (vacating and remanding for resentencing before a different judge).

6        The Camper case is enlightening, and it serves to resolve any confusion as to any possible conflicting

7   authority on the issue of whether resentencing must occur in front of a different judge:

8       Both parties agree that the plea agreement was breached in the instant case. Camper seeks
    remand for resentencing before a different judge, whereas the government requests remand
9       to the same judge. Notwithstanding an apparent conflict in this circuit on whether a breach
    of the plea agreement by the government mandates remand to a different sentencing judge,
10      compare, e.g., United States v. Benchimol, 738 F.2d 1001, 1003 (9th Cir.1984) (where
    prosecution breaches plea agreement provision regarding sentence recommendation,
11      defendant entitled to specific performance and resentencing before a different judge), rev'd
    on other grounds, 471 U.S. 453, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985) (per curiam), with
12      United States v. Travis, 735 F.2d 1129, 1132 (9th Cir.1984) (where remand for resentencing
    is required because government violated plea agreement at sentencing, remand to different
13      judge not usual remedy, it is one reserved for unusual circumstances), the Supreme Court's
    decision in Santobello, of course, is controlling.
14

15      Despite the government's attempt to distinguish Camper's situation from that of the
    defendant in Santobello, the two defendants are in nearly identical positions. As in
16      Santobello, the prosecution made a sentencing recommendation that it should not have, and
    defense counsel objected. The sentencing court then stated that the improper
    recommendation was not a factor in its sentencing decision, but nonetheless sentenced
17      defendant to the maximum sentence available.

18  Camper, 66 F.3d at 233. Camper remains the binding statement of the law on resentencing following

19  government breach in this circuit, and its interpretation of Santobello controls.

20       The Camper court also stated that:

21      The Supreme Court held in Santobello that if a remand for specific performance of the plea
    bargain were ordered by the state courts, resentencing should take place before a different
22      judge. Santobello, 404 U.S. at 262-63, 92 S.Ct. at 498-99. Camper is similarly entitled to be
    resentenced before a different judge. Our remand for resentencing before a different judge
23      in no way implies criticism of the sentencing judge. Rather, it is done simply to insure
    compliance with the plea agreement.
24

25  United States v. Camper, 66 F.3d 229 (9th Cir. 1995) (internal citations omitted).

26       Finally, the Ninth Circuit held in United States v. Benchimol, 738 F.2d 1001 (9th Cir. 1984) that

27  "[w]e remand for resentencing, at which time the government will comply with its plea bargain by clearly

28  stating its recommendation of probation with restitution and the reasons why it believes that sentence is

appropriate. Benchimol is entitled to be resentenced before a different judge." <u>Benchimol</u>, 738 F.2d 1001 (overturned by <u>Benchimol</u>, 471 U.S. 453 (1985) by finding that no breach occurred, with no commentary by any Justice on the Ninth Circuit's statement that, following breach, a defendant is entitled be resentenced before a different judge). It is noted that although <u>Benchimol</u> went to the Supreme Court and was overturned on different grounds, the court did not express any opinion as to the statement of the law in <u>Benchimol</u>. Regardless, <u>Camper</u> addressed the precise issue over ten years after <u>Benchimol</u>, and held that resentencing in front of a different judge was required, and did so expressly based upon that court's interpretation of Supreme Court precedent.

**C.     This Court Should Determine Whether There Was a Breach; If There Was, Recusal Is Appropriate.**

At the July 28, 2008 hearing, this Court expressed some concern that because it was not yet aware of the terms of the post-appeal plea agreement, the appropriate remedy would not be recusal, since it did not know anything about the terms of the plea agreement. The appropriate remedy is recusal any time specific performance is a remedy. Recusal will be appropriate here following this Court's determination on the breach issues for three reasons. First, to determine whether a breach occurred, the court must know what the terms of the agreement were, and whether they were complied with. Second, the breach of the first plea agreement is grounds on its own requiring resentencing in front of a different judge. Third, binding Ninth Circuit precedent clearly states that, the harmless error rule does not apply when the government breaches a plea agreement. <u>Myers</u>, 32 F.3d at 413; <u>Mondragon</u> at 981; <u>United States v. Johnson</u>, 187 F.3d 1135.[2]

Resentencing in front of a different judge is required even where a judge states that the prosecutor's breach has no effect on the sentence. <u>See Johnson</u>, 187 F.3d 1135 ("[a]lthough the district court stated at the sentencing hearing that it was prepared to sentence Johnson to the high end of the sentencing range even before the actual sentencing hearing took place, '[t]he harmless error rule does not apply to the law of contractual plea agreements.' Therefore, we vacate Johnson's sentence because of the government's failure to abide by the plea agreement. Because of the government's breach, we are required to remand for

---

[2] It is important to note that Mr. Esparza-Gutierrez is not claiming that he has a right, or even an option, of going before a different judge based upon his <u>claim</u> of breach of the first and second plea agreements. Mr. Esparza-Gutierrez wants this Court to determine whether either breach occurred. It is at that point, upon a finding of a breach, that recusal and resentencing before a different judge is appropriate.

re-sentencing before a different judge") (citing Santobello v. New York, 404 U.S. 257, 263 (1971); United States v. Camper, 66 F.3d 229, 233 (9th Cir.1995).

In United States v. Myers, 32 F.3d 411, 413 (9th Cir. 1994), the court held that:

> It was insufficient that the court, by reading the presentence report and the plea agreement, was aware that the government had agreed to recommend a sentence at the low end of the guideline range. The harmless error rule does not apply to the law of contractual plea agreements.

Id. Because the harmless error rule does not apply to the law of contractual plea agreements, it is of no matter that the court is not in any way influenced by the government's breach. Upon a finding of breach, the government must specifically perform per the plea agreement, in front of a different judge.

**D.     It Does Not Matter That This Court Had Not Yet Accepted The Plea Agreement, Because Mr. Esparza Detrimentally Relied On It.**

This Court also must determine whether there was a breach because Mr. Esparza-Gutierrez detrimentally relied on the government's promises in the post-appeal plea agreement. As argued in his Motion to Compel Specific Performance, filed on July 29, 2008, Mr. Esparza-Gutierrez detrimentally relied on the government's promises. Where a defendant has detrimentally relied on a promise by the prosecution, that promise must be fulfilled. United States v. Savage, 978 F.2d 1136 (9th Cir. 1992). In Savage, the court held that "[e]ven if the agreement has not been finalized by the court, '[a] defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding.'" Id. at 1138 (citing McKenzie v. Risley, 801 F.2d 1519, 1527 (9th Cir.1986), vacated in part on other grounds, 842 F.2d 1525 (9th Cir. 1986)). See also United States v. Kuchinski, 469 F.3d 853, 858 (9th Cir. 2006).

**III.**

**THE GOVERNMENT BREACHED ITS INITIAL PLEA AGREEMENT, MAKING RECUSAL APPROPRIATE AT THIS STAGE.**

**A.     Summary**

Because this case is currently before this Court for resentencing, after the government breached the initial plea agreement, the appropriate remedy at this stage is recusal, upon a finding by this Court that the government breached its original plea agreement. The government breached, as argued below.

At the March 24, 2008 sentencing hearing, the government recommended a Total Offense Level of 10. In doing so it breached the plea agreement made with Mr. Esparza, which stated that:

     the parties agree that the USSG § 2L1.2 applies in this case and that the
Sentencing Guidelines <u>are to be computed as follows</u>:

```
Base Offense Level:                                          8
Adjustment-Acceptance of Responsibility []:      =        -2 levels
Total Offense Level:                             =           6
```

<u>See</u> Plea Agreement, Docket No. 10, filed 02/26/2008 (emphasis added) (hereinafter "Plea Agreement"). The government's recommendation violated the plain terms of the plea agreement, and it altered the guidelines significantly. This was a breach under <u>Mondragon</u>, 228 F.3d 978.

     The plea agreement contained an explicit promise that in the event criminal history was discovered, the parties would nonetheless recommend the same offense level:

> In the event contrary or additional information is discovered concerning defendant's criminal history which changes defendant's CHC before defendant is sentenced, then (a) the Court may sentence the defendant based upon *the agreed total offense level of 6* at the new CHC; or (b) the Government may withdraw from the plea agreement.

<u>See</u> Plea Agreement (emphasis added). Rather than abide by its promise to recommend sentencing at a total offense level of six, the government instead recommended that Mr. Esparza-Gutierrez be sentenced at a total offense level of ten.

     The government was not complying with its duty of candor to the court. First, the government acknowledged at the time of sentencing that it had no documents on which to base its argument for a four-level enhancement based upon a deportation prior to the felony conviction suffered by Mr. Esparza-Gutierrez. Partial Transcript of March 24, 2008 Hearing, attached hereto as Exhibit A. Second, the government, on remand, has acknowledged that it simply does not have the evidence of a deportation following conviction, and that its sentencing summary chart and position at the sentencing hearing in March was not based upon evidence that it had.

     Recusal is appropriate at this stage because the bell—the government recommendation of sentencing at a total offense level of ten, not at the promised total offense level of six—cannot be unrung. It is no slight to this Court, nor is it any way meant to question this Court's fairness. The remedy called for by Ninth Circuit case law is sentencing in front of a different judge because of the error by the government, not because of bias by the judge. <u>See</u>, e.g., <u>Santobello</u>, 404 U.S. at 263; <u>Mondragon</u>, 228 F.3d at 981 ("[w]e

//

remand to a different judge for re-sentencing because the case law requires us to do so. We intend no criticism of the district judge by this action, and none should be inferred.")

**B.    The Plea Agreement Called For a Joint Agreement That the Total Offense Level Was Six, Not Ten.**

The original plea agreement drafted by the government required the government to recommend sentencing at a total offense level of 6:

> the parties <u>agree</u> that the USSG § 2L1.2 applies in this case and that the Sentencing Guidelines are to be computed as follows:
>
> ```
> Base Offense Level:                                    8
> Adjustment-Acceptance of Responsibility []:    =      -2 levels
> Total Offense Level:                           =       6
> ```

<u>See</u> Plea Agreement (emphasis added). At sentencing, the government did not agree that the guidelines were to be computed in the above manner. It recommended sentencing at a total offense level of ten. <u>See</u> Government's Amended Sentencing Summary Chart, Docket No. 15, filed 3/21/2008. By recommending sentencing at a total offense level four levels higher than that promised by the plea agreement, the government breached the plea agreement.

The contract between Mr. Esparza-Gutierrez and the government contained an express and unambiguous promise by the government to recommend sentencing at a Total Offense level of six. <u>See</u> Plea Agreement. In addition, the contract addressed the precise circumstance that came to pass, in which a previous conviction is discovered by the government prior to sentencing. In such a circumstance, the government reiterated its promise that it would recommend sentencing at the Total Offense Level of six would remain the same. <u>See</u> Plea Agreement ("[i]n the event contrary or additional information is discovered . . . the Court may sentence the defendant based upon <u>the agreed total offense level of 6</u> at the new CHC . . .") (emphasis added). Thus, the government promised Mr. Esparza-Gutierrez it would change its recommendation only as to the applicable Criminal History Category, not as to the total offense level. <u>See</u> Plea Agreement. It did not follow its promise.

**C.    The Government Must Be Held to the Literal Terms of the Agreement.**

Plea agreements are contractual in nature, and are subject to review under contract law standards. <u>United States v. Sandoval-Lopez</u>, 122 F.3d 797, 800 (9th Cir. 1997); <u>United States v. Mondragon</u>, 228 F.3d

1  978, 981 (9th Cir. 2000). "[I]n interpreting plea agreements, the government is to be held to the literal terms
2  of the agreement . . . and ordinarily must bear responsibility for any lack of clarity." United States v.
3  Phillips, 174 F.3d 1074, 1075 (9th Cir. 1999). The Ninth Circuit "steadfastly" applies the rule that "any lack
4  of clarity" in a plea agreement should be construed against the government as drafter of the contract. United
5  States v. Cope, 506 F.3d 908, 914 (9th Cir. 2007). Indeed, "[t]he integrity of our judicial system requires
6  that the government strictly comply with its obligations under a plea agreement." United States v. Allen,
7  434 F.3d 1166, 1174 (9th Cir. 2006).

8  At sentencing, the government and this Court both acknowledged that there was a problem with the
9  terms of the plea agreement, when compared with the government's recommendation:

> I think, Mr. Conover, Mr. Peterson has got a point. You need to change the standard form plea agreement. The change in criminal history also might affect the guidelines, and I think you need to leave yourself that out. Here it adds four points.

Exh. A. Counsel for the government, Mark Conover, stated that: "I agree, your honor. I brought that up. We are working on that." Id. Regardless of how future plea agreements are worded, however, a "plea agreement is a contract; the government is held to the literal terms of the agreement." Johnson, 187 F.3d at 1134. This is because "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Mondragon, 228 F.3d at 980. The unambiguous promise by the government to recommend sentencing at a total offense level of six induced Mr. Esparza-Gutierrez to enter into the agreement, in exchange for a waiver of numerous constitutional rights.[3] See Plea Agreement. In exchange, the government agreed to recommend a total offense level of six and a custodial sentence of sixty days. See Plea Agreement.

---

[3] Specifically, Mr. Esparza-Gutierrez explicitly waived his rights to: (1) continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt; (2) a speedy and public trial by jury; (3) the assistance of counsel at all stages of trial; (4) confront and cross-examine adverse witnesses; (5) present evidence and to have witnesses testify on [his] behalf []; (6) testify or not have any adverse inferences drawn from his failure to testify. See Plea Agreement. In addition, he waived his rights (7) to be indicted by a grand jury; (8) file/argue substantive motions under Fed. R. Crim. P. 12; (9) have a presentence report prepared; (10) appeal the plea; (11) appeal the conviction; (12) appeal the sentence (except in limited circumstances); (13) collaterally attack the plea; (14) collaterally attack the conviction; (15) collaterally attack the sentence; (16) receive impeachment evidence; (17) receive affirmative defense information; (18) argue for downward adjustments, departures or sentence reductions under 18 U.S.C. § 3553(a); (19) appeal, reopen or challenge the removal order following his service of his sentence. See Plea Agreement.

The promise to recommend a total offense level of six was important consideration for waiver of Mr. Esparza's rights because, even at a Criminal History Category III, the sentencing <u>range</u> for a total offense level of six would be two-to-eight months. <u>See</u> USSG § 5. Thus, Mr. Esparza-Gutierrez reasonably expected that, even if his prior conviction were considered by the court, the parties would be presenting a united front as to the applicable guideline range. He did not expect that he be forced to argue against a government claim that an enhancement explicitly precluded by the plea agreement applied. The government promise is important because its expected proposed guideline range of two-to eight months would make the joint recommendation of sixty days a reasonable one that fell within the range recommended by the government.

Instead, the government recommended a guideline range of ten-to-sixteen months, <u>see</u> Docket No. 15, which made the parties' recommendation of sixty days completely unreasonable. Because Mr. Esparza-Gutierrez entered into the plea agreement based upon the promise that the government would recommend a total offense level of six, this was a large part of the consideration in exchange for which he plead guilty. The government should have held to the literal terms of the plea agreement. <u>Johnson</u>, 187 F.3d at 1134. It did not.

**D.   The Government Was Not Merely Complying With Its Duty of Candor To the Court, Because Although It Volunteered That an Enhancement Applied, Even Though It Had No Evidence To Support the Enhancement.**

The government had no duty to breach the plea agreement and recommend a total offense level of ten because it had a legal basis to argue against the four-level enhancement it claimed applied at sentencing: it had no documents proving a deportation following Mr. Esparza's felony conviction. <u>Cf.</u> USSG § 2L1.2(b)(1)(D).[4]

The government was not merely complying with its duty of candor to the court because the deportation that it ultimately brought to the court's attention occurred <u>before</u> the conviction it brought to the court's attention. Thus, it was not a basis to recommend a four-level enhancement. <u>Cf.</u> USSG

---

[4] This guidelines section reads:

If the defendant previously was deported, or unlawfully remained in the United States, <u>after</u> . . . a conviction for any other felony, increase by 4 levels.

1 § 2L1.2(b)(1)(D). The government's remedial action upon remand is new evidence of a breach at the
2 original sentencing hearing. While the government's belated actions are positively noted, they do not affect
3 the proper remedy for the breach that at this point they have essentially acknowledged. The government,
4 at the initial sentencing, suggested that a four-level enhancement applied, and so indicated in its amended
5 sentencing summary chart. However, at the July 28 hearing, the government attempted to file, and orally
6 proffered, a second amended sentencing summary chart that recommended sentencing at the total offense
7 level called for in the plea agreement. The government's efforts to correct the error at the initial sentencing
8 are appreciated, but they do not correct the original breach. See Myers, 32 F.3d 411. In Myers, the judge
9 imposed sentence, and the prosecutor had failed to recommend sentencing at the low end of the guideline
10 range. After the judge had imposed sentence, following defense counsel's objection, the court stated that
11 it "did understand that the government was recommending the low end." The government confirmed this
12 understanding. However, correcting a breach following sentencing did not wash away a breach. As the
13 court cogently stated "[this exchange took place after sentencing and the horse was out of the barn." Id.
14 at 413. In Myers, the breach was "corrected" within minutes. Here, the breach was not corrected for four
15 months and four days. In this case, the horse was well beyond the barn; it had likely left the country. Thus,
16 the government's recommendation on March 24, 2008, that the court impose a four-level specific increase
17 for a deportation after a conviction was not a situation where it was merely complying with its duty of
18 candor, since it had no evidence of a deportation subsequent to conviction upon which to base its
19 recommendation. It's correction of the error following sentencing does not correct the initial breach.

20 The government also went well beyond its duty of candor to the court when it volunteered this
21 information to the court and disagreed with the guidelines recommendation called for in the plea agreement.
22 United States v. Boatner, 966 F.2d 1575 (11th Cir. 1992) (government breached plea agreement where it
23 supported facts in a pre-sentence investigation report that were precluded by the plea agreement). The
24 government did not provide the recommendation of a total offense level of ten in response to questioning
25 by the court. Cf. United States v. Allen, 434 F.3d 1166, 1174 (9th Cir. 2006). The government simply
26 abandoned its promised position and adopted a contrary position the last business day before sentencing,
27 and again at sentencing. See Docket No. 15. At the sentencing hearing, in spite of its promise to
28 recommend sentencing at a Total Offense Level of 6, the government did not object when this Court found

a Total Offense level of 10 in accordance with their criminal history calculations.

At the March 24 sentencing, the government volunteered additional information, in spite of the fact that the court had not requested it. This makes Mr. Esparza's case exactly in line with the government's actions in Boatner, 966 F.2d 1575. Here, this Court only requested information from the United States Probation Office, which fulfilled his request by filing a criminal history report. Given that this Court had all the information it had requested, the government's amending of its sentencing summary chart was simply an attempt to bolster probation's view of the sentencing guidelines, and to influence the court's decision as to the sentence. Boatner, 966 F.2d at 1579. Here as in Boatner, the government "supported the information contained in the presentence investigation report." Id.[5] In doing so, it recommended an enhancement not contemplated by the plea agreement.

**E.   The Government's Breach Is Made Apparent By the Government's Concession On Remand That They Have No Evidence of a Deportation Following the Conviction, Making the Four-Level Enhancement Initially Recommended By Them Inappropriate.**

At the Appeal Mandate Hearing on July 28, 2008, the government sought to submit a "status report" (attached hereto as Exhibit B) and a second amended sentencing summary chart (attached hereto as Exhibit C). The status report and Second Amended Sentencing Summary Chart indicate that the government does not, in fact, recommend the four-level enhancement that was recommended by the government at the March 24, 2008 hearing. See Exhibit B. The status report indicates that "as of June [sic] 28, 2008, the United States cannot present to the Court the original I-205 Warrant of Removal documenting Defendant's alleged deportation on or about January 20, 2008. Id.

Further, the government's concession that it does not have evidence supporting a four-level increase undermines any claim that the government's recommendation of a total offense level of 10, rather than the promised 6, was merely the government fulfilling its duty of candor to the court. The government attorney at the March sentencing hearing acknowledged that he did not have the evidence backing up his recommendation. See Exh. A. In addition, the government has now candidly and formally acknowledged on the record that they do not have the evidence to back up their erroneous recommendation at sentencing.

---

[5] The primary case relied on by the Ninth Circuit in Allen was United States v. Ahn, 231 F.3d 26 (D.C.Cir. 2000). Ahn does not apply to the instant set of facts. In Ahn, unlike here, the district court requested that the prosecution question a witness. The D.C. Circuit found no breach by the government, because it was responding to the judge's request for information.

See Exhibits B & C.

In essence, the government's recantation of its original recommendation that the appropriate Total Offense Level, based upon the fact that it did not have the facts to support its recommendation of a four-level enhancement demonstrates the breach in the first instance. The government recommended to this Court that the appropriate Total Offense Level was 10, with a resulting guideline range of 10-16 months. Now, months later, the government concedes that under the original plea agreement, what it can recommend under the plea agreement is a Total Offense Level of Six, with a resulting guideline range of 2-8 months. Hence, it's recommendation is no longer <u>eight months below</u> the resulting guideline range, it is the <u>low end</u> of the resulting guideline range recommended by the government. This acknowledgment demonstrates that the government was in breach at the original sentencing hearing, and the prejudice is obvious.

However, even though the prejudice flowing from the government's recommendation of a guideline range exponentially greater than that promised is obvious, prejudice is simply unnecessary in the context of a breach of a plea agreement. "The harmless error rule does not apply to the law of contractual plea agreements." <u>Myers</u>, 32 F.3d at 413.

As explained above, because the government breached its original plea agreement, the appropriate remedy is resentencing before a different judge. <u>Mondragon</u>, 228 F.3d at 981; <u>Johnson</u>, 187 F.3d at 1132; <u>Camper</u>, 66 F.3d 229, 233 (9th Cir.1995); <u>United States v. Benchimol</u>, 738 F.2d 1001, <u>overturned on other grounds by</u> <u>United States v. Benchimol</u>, 471 U.S. 453; <u>Camarillo-Tello</u>, 236 F.3d at 1028; <u>Allen</u>, 270 Fed.Appx. 638.

Respectfully submitted,

Dated: August 1, 2008        */s/ DAVID M.C. PETERSON*
DAVID M.C. PETERSON
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Esparza-Gutierrez
David_Peterson@fd.org

INDEX TO EXHIBITS

EXHIBIT A   Partial Transcript March 24, 2008 Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

EXHIBIT B   Government Status Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

EXHIBIT C   Government Amended Sentencing Summary Chart . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney via ECF NEF

Copy to Defendant

Dated: August 1, 2008         /s/ DAVID M. C. PETERSON
                              Federal Defenders of San Diego, Inc.
                              225 Broadway, Suite 900
                              San Diego, CA  92101-5030
                              (619) 234-8467  (tel)
                              (619) 687-2666  (fax)
                              David_Peterson@fd.org (email)