1  KAREN P. HEWITT
   United States Attorney
2  CALEB E. MASON
   Assistant United States Attorney
3  California Bar No. 246653
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-5956/(619)235-4716(Fax)
   Email: caleb.mason@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8              **UNITED STATES DISTRICT COURT**
                **SOUTHERN DISTRICT OF CALIFORNIA**
9

10 UNITED STATES OF AMERICA,      ) Criminal Case No.  08CR0416LAB
                                  )
11             Plaintiff,         )
                                  ) Response in Opposition
12        v.                      )
                                  )
13 FRANCISCO ESPARZA-GUTIERREZ,   )
                                  ) Date:      August 18, 2008
14             Defendant.         ) Time:      3 p.m.
                                  ) Honorable: Larry A. Burns
15 _____) Courtroom:

16      The UNITED STATES OF AMERICA, by and through its counsel, KAREN

17 P. HEWITT, United States Attorney, CALEB E. MASON, Assistant United

18 States Attorney, hereby files the following Response in Opposition to

19 Defendant's Motion to Compel Specific Performance and to Dismiss the

20 Indictment.

21

22              I. Facts and Procedural History

23      On January 21, 2008, at 9 p.m., defendant Francisco Esparza-

24 Gutierrez ("Defendant") was found by the Border Patrol, hiding in the

25 bushes one mile north of the U.S.-Mexico border and ten miles east of

26 the Tecate, CA, port of entry.  Records checks revealed that Defendant

27 had been deported from the United States to Mexico on August 20, 2007,

28 and that between August 2007 and January 2008 he had been apprehended

   approximately 30 times, and each time was voluntarily returned to

1  Mexico.

2      As part of a "fast track" early disposition program, Esparza

3  negotiated a plea agreement with the government.  The plea agreement

4  was filed on February 26, 2008.  The parties signed a plea agreement

5  that provided, inter alia, that USSG § 2L1.2 applied, and that the

6  offense should carry a base offense level of 8 and a two-level

7  downward adjustment for acceptance of responsibility, for a total

8  offense level of 6.  The agreement provided that the parties would not

9  recommend any upward or downward adjustments or departures, and that

10 the parties had no agreement as to the defendant's criminal history.

11 The agreement provided that:

12          in the event contrary or additional information is
            discovered concerning defendant's criminal history which
13          changes defendant's CHC before defendant is sentenced,
            then (a) the Court may sentence the defendant based upon
14          the agreed total offense level of 6 at the new CHC; or (b)
            the Government may withdraw from the plea agreement or
15          move to set aside the guilty plea or both.

16
        The agreement provided that the parties would jointly recommend
17
   60 days' imprisonment.
18
        The government filed its Sentencing Summary Chart on February 28,
19
   2008.  That chart included a "rap sheet" summary of the defendant's
20
   criminal history then known to the government.  The chart showed no
21
   criminal history.
22
        On March 11, 2008, the Probation Department filed a criminal
23
   history report which noted a conviction on November 13, 2007, for
24
   reentry following deportation in violation of 8 U.S.C. § 1326.
25
        On March 24, 2008, the government filed an amended Sentencing
26
   Summary Chart, noting the November 13, 2007 conviction on its rap
27
   sheet, and revising the guidelines calculations on its chart.
28
        The government's amended chart included a +4 adjustment under §

                                    2                              08cr0416

1 2L1.2(b)(1)(D) (deportation following felony conviction) yielding an

2 adjusted offense level of 12, and included 5 criminal history points,

3 for a category of III, and a range of 10 to 16 months.  The amended

4 chart, however, retained the original recommendation of 60 days.

5     Defendant objected to the filing of the amended chart, arguing

6 that the government was recommending a higher level, in breach of the

7 plea agreement.   The court inquired of defense counsel whether he

8 wished to withdraw from the agreement because of the government's

9 filing.  Defense counsel stated that he did not wish to withdraw. The

10 court then overruled the objection, finding that the government had

11 not changed its recommendation and was therefore not in breach.   The

12 court   distinguished   between   provision   of   information   and

13 recommendation of a sentence.  The court noted that government counsel

14 has an ethical obligation, not subject to contractual waiver, to

15 apprise the court of whatever information it has about a defendant's

16 criminal history, and to provide the court with an accurate guidelines

17 calculation.

18     Defendant   objected   that   the   government   had   not   provided

19 documentation of a deportation following the newly-discovered illegal

20 reentry conviction.  The government acknowledged that it had not yet

21 provided that documentation to the court, because it had not yet

22 received it.  The court then asked defense counsel about Esparza's

23 immigration history:

24     [The Court:] I don't know because I don't have a full
      probation report, but I am assuming that there is a
25     deportation history anyway that lead to this first
      charging this fellow.
26     [Defense Counsel]: That is the August 20th deportation.
      The Court: Not more than that? He hasn't been caught a
27     bunch of times?
      [Defense Counsel]: I believe there are a number of
28     returns.
      The Court:  So the point is, Mr. Esparza can't come back

08cr0416

1    into the United States.  The Border Patrol has told him
2    that and two judges have now told him that.

3    The court found that the four-level adjustment was appropriate.

4 The court then found that the correct offense level was 10, and the

5 correct category was III.  The court sentenced Esparza to five years

6 of probation, with an initial term of imprisonment of nine months.

7 Defense counsel did not object to the imposition of custody as a

8 condition of probation.  Defense counsel did object to the length of

9 the five-year term, arguing that two years was the applicable maximum.

10    Defendant timely appealed, alleging that the sentence imposed was

11 illegal, that the government had breached its plea agreement, and that

12 the court had erred in imposing that 4-level upward adjustment for

13 deportation following a felony conviction.

14    On June 27, the government filed a Motion for Summary Reversal,

15 arguing that the sentence imposed violated United States v. Forbes,

16 172 F.3d 675 (9th Cir. 1999), and that in light of the necessity for

17 vacating the sentence and remanding for resentencing, Defendant's

18 other two claims were moot because they derived from the original

19 sentencing hearing.  Defendant filed a Response, stating that he did

20 not oppose the motion "for the reasons given by the government."

21    On July 24, 2008, the Ninth Circuit granted the motion for

22 summary reversal.  On July 28, 2008, the parties appeared for the

23 spreading of the mandate.  Defendant requested that the Court recuse

24 itself on the grounds of a second alleged breach of a plea agreement.

25 The government informed the Court that as of that date (July 28), it

26 still did not have the original I-205 Warrant of Removal establishing

27 Defendant's January 20, 2008 deportation, on foot, to Mexico, through

28 the Tecate Port of Entry, and therefore could not, on that date,

1  recommend the 4-level upward adjustment.[1]

2      The Court requested briefing on the issue of whether Defendant

3  was entitled to immediate recusal, and briefing under seal on the

4  substantive allegations of breach.   Defendant filed a motion under

5  seal on July 29, 2008.   The United States addresses the substantive

6  breach allegations made in that motion in a separate response motion,

7  filed under seal.

8      Here the United States responds to the allegations made in

9  Defendant's motion of August 1, 2008.   In that motion, Defendant

10 revisits the original breach allegation made at the March 24, 2008

11 sentencing.

12

13                        II. Argument

14     A.    The Government Did Not Breach the Plea Agreement at
             the March 24, 2008 Sentencing Hearing, Because It
15           Recommended Precisely What It Agreed To Recommend.

16

17     This Court has already ruled on the issue of breach of the

18 initial plea agreement.   That ruling was correct, for the reasons

   outlined herein.[2]

19
       The crucial conceptual distinction is between recommending a
20
   sentence and providing information to the court.   The Sentencing
21
   Summary Charts filed by the government in fast-track cases serve both
22
   purposes.   In cases such as the instant case, where the recommended
23

24
       [1]As of this filing, the government is in possession of a faxed
25 copy of the I-205 establishing the January 21, 2008 removal.   It is
   attached as Exhibit A.
26
       [2]The United States does not contest Defendant's claim that in the
27 event of a finding of breach he would be entitled to resentencing
   before a different judge.   However, as this Court has explained, and
28 as Defendant concedes, a finding of breach is is a necessary
   precondition of reassignment. An allegation of breach is not enough.

1  sentence is less than the time required by the Probation Department

2  to prepare a full Presentence Report, that information-provision

3  function is particularly important, because the court must sentence

4  the defendant based solely on the information provided by the parties.

5  And in all cases, provision of accurate factual information and

6  accurate calculation of the Sentencing Guidelines is an ethical

7  obligation of government counsel, required by counsel's duty of candor

8  to the tribunal. <u>United States v. Maldonado</u>, 215 F.3d 1046, 1052 (9th

9  Cir. 2000) ("[D]espite a plea agreement to make certain

10 recommendations, the government has a duty to ensure that the court

11 has complete and accurate information, enabling the court to impose

12 an appropriate sentence."). It is not, in short, up to the government

13 what information to provide.

14     The government's <u>recommendation</u>, on the other hand, is up to the

15 government. The recommendation is what the government requests that

16 the court do, and it is precisely that request that constitutes a

17 defendant's consideration for entering into the plea bargain.

18     The distinction between accurately advising the court as to the

19 facts and law on the one hand, and recommending a sentence on the

20 other, is underscored by the structure of the Sentencing Summary

21 Chart. The only place the chart uses the word "recommend" or its

22 variants is on the bottom line. The information furnished in the rest

23 of the chart apprises the court of factual and legal information known

24 to the government. Indeed, the bottom-line recommendation is the only

25 component of the chart that the government is free to modify as it

26 chooses. A defendant's criminal history is a matter of fact, and the

27 guidelines calculation is a matter of law; the government can neither

28 alter them by fiat nor contract them away. They are what they are,

1  entirely independent of prosecutorial discretion and plea bargaining.

2  The plea agreement neither does nor could require that the government

3  misinform the court as to facts or law, in violation of its duty of

4  candor to the tribunal.  The accurate calculation of the guidelines

5  is an ethical duty; it is not subject to contractual modification.

6  Defendant's attempt to use the plea agreement to prevent accurate

7  information from reaching the sentencing court should be rejected.

8       Moreover, the plea agreement specifically contemplated both that

9  new criminal history might be discovered, and that USSG § 2L1.2

10 applied.  No reasonable attorney could fail to know that under 2L1.2,

11 prior convictions can affect a defendant's offense level.  And  no

12 reasonable attorney would advise his client that the plea agreement

13 imposed a requirement that if prior convictions were discovered, the

14 government would be obligated to hide them from the court, or to

15 misinform the court about their legal effect.  By contrast, the

16 reasonable understanding of the agreement- and the one that the

17 district court applied- is that the government will be constrained

18 from recommending that the defendant be sentenced at a higher offense

19 level.

20      And that reasonable understanding is entirely borne out by the

21 government's conduct in this case.  Contrary to Esparza's contention,

22 the government did not recommend sentencing at offense level 10. The

23 government recommended precisely  what it agreed to recommend under

24 both Paragraph 8 and Paragraph 9 of the agreement: sentencing at level

25 6.  The government's recommendation was 60 days, or two months.  Level

26 6 at Category III yields a range of 2-8 months, and the government

27 recommended 60 days, the low end of that range, and the agreed-upon

28 sentence.

08cr0416

1    It is evident from the chart itself that the government did not

2 recommend sentencing at offense level 10.  The range at level 10 and

3 category III is 10-16 months.  Esparza's contention that the

4 government recommended a sentence at level 10 and category III is

5 refuted by the entire record of proceedings: a 60-day sentence at

6 level 10 in category III is a logical impossibility.  See USSG § 5.A

7 (Sentencing Table).

8    If a defendant is at level 10 in category III, then in order to

9 reach a 60-day sentence, a court must either depart downward under the

10 guidelines,  or  vary  from  the  guidelines  using  its  post-Booker

11 discretion.  Accordingly, if the government in fact recommended a

12 sentence at level 10, then the government would necessarily have had

13 to recommend either a downward departure or a Booker variance under

14 § 3553(a) in order to make a 60-day recommendation.  But the

15 government made departure or variance recommendations, because it did

16 not need to; its recommendation was a level 6 sentence, precisely what

17 it agreed to make.

18    There are, in short, only three possible scenarios for a level

19 10, Category III recommendation: first, a recommended sentence of 10

20 to 16 months; second, a recommendation of a lower sentence via a

21 guidelines departure to a lower offense level; third, a recommendation

22 of lower sentence via a Booker variance to a lower sentence.  None of

23 these scenarios occurred, for the straightforward reason that the

24 government did not make a Level 10, Category III recommendation.

25    The government's recommendation of 60 days is instead the correct

26 calculation under the agreement: it is the low end of offense level

27 6 at criminal history category III.

28

1                             III. <u>Conclusion</u>

2      This Court should find, as it found at the original sentencing

3 hearing, that the government did not breach the plea agreement.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                08cr0416

1

2                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF CALIFORNIA
3

4

5  UNITED STATES OF AMERICA,      )     Case No. 08cr0416LAB
                                  )
6                  Plaintiff,     )
                                  )
7            v.                   )
                                  )     CERTIFICATE OF SERVICE
8  FRANCISCO ESPARZA-GUTIERREZ,   )
                                  )
9                  Defendant.     )
                                  )
10
   IT IS HEREBY CERTIFIED THAT:
11
        I, Caleb Mason, am a citizen of the United States and am at least
12 eighteen years of age.  My business address is 880 Front Street, Room
   6293, San Diego, California 92101-8893.
13      I am not a party to the above-entitled action.  I have caused
   service of this Response, dated August 7, 2008, and this Certificate
14 of Service, dated  August 7, 2008, on the following parties by
   electronically filing the foregoing with the Clerk of the District
15 Court using its ECF System, which electronically notifies them:

16      David Peterson, Esq.
        Attorney for defendant
17

18      I declare under penalty of perjury that the foregoing is true and
   correct.
19
        Executed on August 7, 2008.
20

21                              /s/ Caleb E. Mason
                                CALEB E. MASON
22                              Assistant United States Attorney

23

24

25

26

27

28

                                   10                              08cr0416