**DAVID M.C. PETERSON**
California State Bar No. 254498
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
E-mail: david_peterson@fd.org

Attorneys for Mr. Esparza-Gutierrez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 08cr0416-LAB |
| Plaintiff, ) | Date: August 18, 2008 |
| ) | Time: 3:00 p.m. |
| v. ) | |
| ) | **REPLY TO UNITED STATES' RESPONSE IN** |
| FRANCISCO ESPARZA-GUTIERREZ, ) | **OPPOSITION** |
| ) | |
| Defendant. ) | |

TO: KAREN P. HEWITT, UNITED STATES ATTORNEY;
CALEB MASON, ASSISTANT UNITED STATES ATTORNEY.

COMES NOW the accused, Francisco Esparza-Gutierrez, by and through his counsel, David M.C. Peterson and Federal Defenders of San Diego, Inc., and hereby files his reply to the plaintiff's response and opposition to his briefing on the procedural posture of the case. This reply is based upon the files and records of this case, the prior pleading, and the attached memorandum of points and authorities.

//
//
//
//
//
//

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

Mr. Esparza-Gutierrez hereby incorporates his statement of facts in his Briefing on the Procedural Posture of the Case. In addition, Mr. Esparza-Gutierrez attaches the entire transcript of the March 24, 2008 sentencing hearing before this court. The government recommended sentencing at a total offense level of ten. At no point did the government recommend sentencing at a level six. See Reporter's Transcript of the Proceedings, pp. 1-23, attached hereto as Exhibit A. Further, the government's response and opposition contains unrequested evidence of the four-level enhancement the plea agreement precludes is from recommending, in the form of Docket No. 32, Exhibit A. This is an additional breach of the plea agreement.

## II.

**A.   Summary.**

The government puts forth two arguments in response:

1) the government was bound to recommend sentencing at a total offense level of ten because that was the accurate guidelines calculation; and

2) the government recommended sentencing at a total offense level of six.

These arguments are inconsistent with each other. They are also wrong.[1]

Further, by affirmatively filing the I-205 Warrant of Deportation as an attachment to its Response and Opposition, Docket No. 32, the government has yet again breached its plea agreement with Mr. Esparza-Gutierrez. It has volunteered information, unrequested by this Court, in support of a specific offense characteristic increase of four levels. The government has no duty to provide the court with

---

[1] The government also appears to suggest at one point that it did not make a recommendation, in that its suggestion that a total offense level of ten applied was only the government "appris[ing] the court of factual and legal information known to the government." See Docket No. 32 at 6. This argument is not only inconsistent with the other two inconsistent arguments made by the government, it is erroneous for two reasons. First, the government did not at the time of sentencing have any facts with which to apprise the court of a deportation following conviction. Second, the government need not use the word recommend in order to make a sentencing recommendation to the judge. Mondragon, 228 F.3d at 981 "We apply the common usage of the term 'recommendation' as including 'a statement ... giving advice or counsel.'"

2

1  additional information when not requested; to the contrary, where it has promised that it will not
2  recommend the enhancement, it is a breach to volunteer information in support of an enhancement. See
3  United States v. Boatner, 966 F.2d 1575 (11th Cir. 1992) (when the government volunteers evidence
4  suggesting that the plea agreement is inaccurate or incomplete, the government is in breach, even if it
5  simultaneously states that it "will stick to its stipulation" in the plea agreement); cf. United States v. Allen,
6  434 F.3d 1166, 1175 (2006) (no breach where the government simply "responded to the district court's
7  specific requests").

**B.  The Government Was Not Complying With an "Information-Provision Function" When It Recommended Sentencing At Level Ten; It Was Making a Recommendation To the Court.**

### 1.  The Government's Brief Ignores the Circuit Law that Undercuts its Arguement

The government's first argument is that, in essence, it was bound to recommend a Total Offense Level of 10 because of its duty of candor to the court.[2] The government claims that it is not "up to the government what information to provide." However, this simply is wrong. When the government makes a promise not to recommend an enhancement or upward adjustment, it may not affirmatively seek that enhancement or adjustment, and it may not volunteer information to the court to try and achieve its goal of obtaining that enhancement. Only upon direct judicial inquiry does an obligation to provide the court with information arise. Boatner, 966 F.2d at 1579; accord United States v. Taylor, 77 F.3d 368, 370-71 (11th Cir. 1996); cf. Allen, 434 F.3d at 1175 (citing Boatner). Thus, the duty of candor does not give the government license to recommend and argue in favor of a higher sentence than it promised to recommend at sentencing. Mondragon, 228 F.3d at 980; see also, United States v. E.V., 500 F.3d 747, 752-53 (8th Cir. 2007) ("Therefore... the assumption that prosecutors in the Eighth Circuit may submit evidence in contradiction to plea agreements where necessary to correct factual misstatements, is fundamentally flawed").

The government's "brief" is devoid of legal analysis, instead making legal conclusions without citation. See e.g., Response In Opposition, Dkt # 32, at 5: 19-23 ("The crucial conceptual distinction is

---

[2] This argument would seem to be at odds with the government's second argument that it recommended sentencing at a Total Offense Level of 6.

3

between recommending a sentence and providing information to the court") (no authority cited) (emphasis removed).[3] More important than the lack of lawyering, however, is the fact that such "legal" conclusions are incorrect. The government simply is <u>not</u> allowed to "provid[e] information to the court" when it contradicts the spirit of the plea agreement. <u>See e.g.</u> <u>United States v. Nolan-Cooper</u>, 155 F.3d 221 (3d Cir. 1998) (government's claim that it was simply informing the court of the nature and extent of defendant's activities did not change the fact that it breached "the spirit, if not the letter of the plea agreement" not to make upward adjustment) (citing and quoting <u>United States v. Badaracco</u>, 954 F.2d 928, 940 (3d Cir. 1992)).

The government cites one case in its entire brief to support any of its positions: <u>United States v. Maldonado</u>, 215 F.3d 1046 (9th Cir. 2000). The government takes one quote out of context from this case in order to attempt to persuade this Court of its position. <u>See</u> Response in Opposition, Dkt #32, at 6: 8-12. In so doing it ignores <u>Allen</u>, 434 F.3d 1166 (decided subsequently) and the facts of <u>Maldonado</u>. In <u>Maldonado</u>, the PSR came out with a different base offense level than was called for in the plea agreement.

---

[3] Another good example of the government coming to legal conclusions without authority, and not surprisingly, incorrectly, is its outlandish claim that a "[a] defendant's criminal history is a matter of fact, and [in contrast] the guidelines calculation is a matter of law." <u>See</u> Gov't Response, Docket No. 32, at 6:26-27. This is incorrect as a matter of law. The government ignores again what it ignored in March when it recommended a total offense level of 10: guidelines calculations, particularly ones resulting in higher sentences must be based upon <u>facts</u>. <u>See, e.g.</u> <u>United States v. Staten</u>, 466 F.3d 708, 720 (9th Cir. 2006) ("[T]his circuit's established rule, requiring <u>facts</u> found in support of Guidelines enhancements that turn out to have a disproportionate impact on the ultimate sentence imposed to be established by clear and convincing evidence, continues to govern sentencing decisions") (emphasis added); <u>See, e.g.</u> <u>United States v. Lindholm</u>, 24 F.3d 1078, 1086 (9th Cir. 1994) ("district court's determination that a defendant has engaged in more than minimal planning is heavily dependent upon the <u>facts</u> of the case . . .") (emphasis added); <u>see also</u> <u>United States v. Zuniga</u>, 66 F.3d 225, 228 (9th Cir. 1995) ("The district court's <u>factual</u> findings in the sentencing phase are reviewed for clear error. Circumstances justifying an increase from the base offense level must be proven by a preponderance of <u>the evidence</u>") (internal citations ommitted); <u>United States v. Brickey</u>, 289 F.3d 1144, 1153 (9th Cir. 2002) ("The application of the abuse of trust enhancement is a mixed question of <u>fact</u> and law, which we review de novo") (emphasis added); <u>United States v. Chapnick</u>, 963 F.2d 224, 226 (9th Cir.1992) ([a]pplication of the Sentencing Guidelines is a mixed question of law and <u>fact</u>, and is reviewed de novo. <u>Factual conclusions</u> underlying the application of the Sentencing Guidelines are reviewed for clear error") (emphasis added). Indeed, in addition to the fact of conviction (and deportation for that matter), a +4 under U.S.S.G. § 2L1.2(B)(1)(D), requires a factual determination regarding temporal relationship; *i.e.*, which came first, conviction or deportation. <u>See</u> <u>United States v. Covian-Sandoval</u>, 462 F.3d 1090 (9th Cir. 2006) (plain error for the court to find "the existence of a <u>subsequent removal</u> that was neither proven beyond a reasonable doubt at trial nor admitted by Covian") (emphasis added).

Maldonado, 215 F.3d at 1048. In its written response to the PSR the government acknowledged that the probation officer's guideline calculation was correct. Id. at 1049 n. 2. However, in its written pleadings it went on to recommend the lower base offense level as called for in the agreement. Id. At the sentencing hearing the government orally, once again, reiterated its recommendation of the offense level by standing by the one called for in the agreement. Id. at 1049 ("I stand by my plea agreement at recommending a level 32...."). The fact that the Ninth Circuit found no breach is not surprising; after all, the government made the guideline recommendation called for in the plea agreement both in writing and orally before sentencing.[4] In contrast, the government here failed to stand by its recommendation in either its written pleading (see Gov'ts Amended sent. summ. cht.; dkt # 15, or orally at the hearing. Indeed, the government went so far as to do the opposite. In its written submission to the Court it recited only one offense level: the higher one - - 10 (four levels higher than called for in the plea agreement). (See Gov'ts Amendent Sent. Summ. Cht.; dkt # 15). Moreover, the government here, unlike in Allen and Maldonado, was proactive; that is, it calculated the offense level without prompting from probation or the Court.

### 2. The Government Exacerbated its Breach by Making a Guidelines Recommendation Not Supported by the Evidence

Finally, despite the government's claims, it was not providing "facts," "evidence," or even "information" to the court at the initial sentencing hearing.[5] Resp. in Opp. at 5, 7. It claimed Mr. Esparza was deserving of a +4 enhancement due to a felony conviction prior to deportation. However, the temporal relation between felony and deportation is a necessary component to the enhancement. Covian-Sandoval, 462 F.3d at 1097 ("[t]heremoval that Covian admitted at trial was in 1997. Because his felony conviction was not until 2002, that removal does not support a sentence enhancement, and there was no mention in the indictment or at trial of any other removal"). Here, the government had no evidence to show that the felony preceded the deportation. This is made clear by the record. See Exh. A at 19 (Government counsel:

---

[4] It is also no surprise in light of the fact that this was a plain error case - - another fact ignored by the government. Id. at 1052.

[5] It cannot go without saying that the "government cannot, [], rely on a general provision of the plea agreement permitting it to comment on the facts of the case to defeat the purpose of a specific provision requiring it not to oppose the defendant's position on the applicability of a particular [guideline] adjustment." United States v. Nolan-Cooper, 155 F.3d at 237.

"I think defense counsel may be alluding to the fact that we have not yet received the deportation documents"; see also Exhibit B to Docket No. 30, Government Status Report ("as of June 28 [sic], the United States cannot present to the court the original I-205 Warrant of Removal documenting defendant's alleged deportation on or about January 20, 2008"); Exhibit C to Docket No. 30 (government recommending a Total Offense Level of 6 upon remand from the Ninth Circuit). Moreover, the government admitted to this Court, on July 28, 2008, upon remand, that it could not recommend the +4 because it did not have the evidence to support it. As the Eleventh Circuit stated:

> Enforcement of the [plea agreement] entails an obligation to refrain from introducing evidence to the contrary; that the prosecutor expressly disavowed seeking the enhancement does not negate this obligation. [citation omitted]. This is especially true where, as here, the government proffered alternative reasons for admitting the evidence are questionable.

E.V., 500 F.3d at 754.[6]

Finally, the government attempts to justify its breach of the plea agreement by arguing that it was bound to state that a four-level increase applied. This is simply not so. First, the law, as applied to the facts the government had at the date of sentencing, did not require the government to recommend the increase. Second, even if there were facts supporting the enhancement, the government had an obligation not to call them to the court's attention or go out of its way to recommend the enhancement in the Amended Sentencing Summary Chart, since it had contracted out of making the recommendation for that enhancement. See Plea Agreemtent, dkt #10 ("The parties agree . . . that the Sentencing Guidelines are to be computed as follows. . . Total Offense Level 6); ("The parties agree further that in the event contrary or additional information is discovered concerning defendant's criminal history which changes the defendant's CHC before defendant is sentenced, then . . . the Court may sentence the defendant based upon the agreed total offense level of 6 at the new CHC. . .") The government, as this court is aware, at times foregoes recommending a possible, likely, or even certain, enhancement at sentencing in order to reach a resolution in a particular case. While the government cannot prevent the court from applying a particular enhancement, it can most certainly agree to not recommend it. When a plea agreement does not call for

---

[6] The fact that the government recommended an increase of four levels to Mr. Esparza's offense level without an evidentiary basis to do so makes its plea, "[d]efendant's attempt to use the plea agreement to prevent **accurate** information from reaching the sentencing court should be rejected.," both laughable and disingenuous. Gov't Response at 7:6-7 (emphasis added).

6

an enhancement, and instead promises recommendation at a particular offense level, the government cannot turn around and recommend that enhancement, or bring facts to the court's attention, simply because there are facts to support the enhancement.

The government argues that guidelines calculations "are what they are." Being what they may be, the government has changed its guidelines calculations in the course of this case from a total offense level of six, see Sentencing Summary Chart, Docket No. __, to a ten, see Amended Sentencing Summary Chart, Docket No. __; and back to a six, see Second Amended Sentencing Summary Chart, Exhibit A to Docket No. __.[7]

At the end of the day, what the government did in this case is indistinguishable from the government's breach in Mondragon. There, the Ninth Circuit held that "because the prosecutor's comments did not provide the district judge with any new information or correct any factual inaccuracies, the comments could have been made for only one purpose: to influence the district court to impose a harsher sentence . . ." While the government denies that it was in fact recommending the guideline calculations it made in its Amended Sentencing Summary Chart, a statement need not be preceded by the word "recommend" to be a recommendation. Mondragon, 228 F.3d at 981 "We apply the common usage of the term 'recommendation' as including 'a statement ... giving advice or counsel.'" The government was advising this Court that it believed an enhancement applied, and it was counseling this Court to apply that enhancement. This was precluded by the plea agreement.

Where the government is providing no new information to the court, it is under no duty to affirmatively support something that has otherwise come to the court's attention. Mondragon, 228 F.3d at 980 (government breached the plea agreement, and was not simply complying with its duty of candor because the "information provided by the prosecutor to the district judge, i.e., the number of times appellant ran from police, failed to appear, had warrants issued, and violated probation, was included in the presence report which was reviewed by the district judge").

---

[7] Indeed, if guidelines calculations simply "are what they are," it is difficult to explain how sentencing summary charts provided by government and defense counsel so frequently differ. There is often a three-way disagreement as to the appropriate calculations once the United States Probation Office is considered. Finally, all three recommendations can be disregarded by the judge if that judge finds facts supporting a fourth view of the guidelines.

7

1  **C.     The Government Did Not Recommend Sentencing at Level Six; It Recommended Sentencing at Level Ten.**

The government states, unbelievably, in its response brief that it did not breach the plea agreement at the March 24, 2008 hearing because it recommended "sentencing at level 6." See Response and Opposition, Docket Number 32, at 7:24-25; 8;16-17. The government provides no citation to any moment in which it actually stated or implied that sentencing at a total offense level of 6 during the entire March 24, 2008 sentencing hearing. Indeed, this uncited contention is belied by the record. See Dkt # 15 ("Total Offense Level: 10"). In fact, the only recommendation made by the government as to the guideline calculation is in the government's sentencing summary chart, where they state clearly and without equivocation that the total offense level is 10. See id. Thus, the government's single affirmative statement as to the offense level, in a formal document filed with the court, was that the total offense level is 10. And government never once said that the total offense level was 6. This combination of facts cannot, by any stretch of the imagination, be construed as a recommendation at a total offense level of 6. Their amended sentencing summary chart is crystal clear: it recommends sentencing at a total offense level of 10. See Docket # 15.

The government further argues that because it did not recommend any departures or variances to arrive at its 60-day recommendation, it <u>must</u> have been making a recommendation at a Total Offense level of six. Again, this contention is utterly unsupported by the record, and belied by the Amended Sentencing Summary Chart filed by the government before the initial sentencing hearing. See Dkt. # 15 ("Total Offense Level: 10"). The government claims that a 60-day recommendation at a Total Offense Level of 10 in Criminal History Category III is a "logical impossibility" because it is far below the sentencing range. That the government's recommendation was nonsensical does not mean that it therefore must have recommended something different. The chart is plain. It states that the Total Offense Level is 10. Id.

In sum, the government's contention that it recommended sentencing at a Total Offense Level of 6 is unsupported by the record, which clearly demonstrates that it recommended sentencing at a Total Offense Level of 10. See id. The government fails to point to any instance at which it stated that the Total Offense Level was 6.

**D. The Attachment to the Government's Response and Opposition Constitutes Yet Another Breach of the Initial Plea Agreement.**

The government's brief has, attached as Exhibit A, an I-205 purporting to establish a January 21, 2008 removal. By providing this information—unrequested—to the court, the government has <u>yet again</u> breached the plea agreement. By providing the court with information in support of an increased sentence they are precluded from requesting, and without any request that they do so by the court, the government has affirmatively contradicted its required recommendation of a total offense level of six, without an enhancement for a deportation following a felony conviction. While the government's duty of candor to the court may at times conflict with and supercede its duty to follow plea agreements, <u>United States v. Allen</u>, 434 F.3d 1166, 1175 (9th Cir. 2006) ("honest response of the government to direct judicial inquiry is a prosecutor's professional obligation that cannot be barred, eroded or impaired by a plea agreement"), the government certainly has no obligation to provide unrequested information to the court that contradicts its required sentencing recommendation.

Indeed, the government indicates the levity with which it treats its promise as to a recommended sentence when it states that its July 24, 2008 sentencing summary chart indicates that it "could not, on that date, recommend the 4-level upward adjustment." The government, according to the plain terms of the plea agreement <u>can never</u> recommend the 4-level upward adjustment. <u>See</u> Dkt # 10 ("the parties agree . . . the Sentencing Guidelines are to be computed as follows: Base Offense Level 8 . . . Total Offense Level 6). Unfortunately, the government has recommended the 4-level upward adjustment, both on March 21, when it filed its sentencing summary chart, and at the March 24 sentencing hearing. As icing on the cake, the government has now provided the court with unrequested information in support of the four-level upward adjustment, once again breaching the plea agreement. <u>United States v. Boatner</u>, 966 F.2d 1575, 1579 (11th Cir. 1992) ("the government supported the information contained in the presentence investigation report by declaring to the court that its later investigations had revealed that the amount of cocaine involved was actually between two and three-quarters and three kilograms. This information was specifically precluded by the plea agreement. Consequently, the government violated its agreement at the sentencing hearing when it attempted to bolster the presentence investigation report"); <u>cf.</u> <u>Allen</u>, 434 F.3d at 1175 ("honest response

1 of the government to <u>direct judicial inquiry</u> is a prosecutor's professional obligation that cannot be barred,
2 eroded or impaired by a plea agreement") (emphasis added).
3     While the prosecutor could, arguably, present the I-205 upon request by this Court under <u>Allen</u>, 434
4 F.3d at 1175, it did not do so. Instead, it has simply volunteered the information supporting the
5 enhancement, and once again breached the plea agreement. <u>See</u> <u>Mondragon</u>, 228 F.3d at 980; <u>Boatner</u>, 966
6 F.3d at 1579.

## III.
## CONCLUSION

For these and all the foregoing reasons, the defendant, Mr. Esparza-Gutierrez, respectfully requests that this Court grant his motions and grant any and all other relief deemed proper and fair.

Respectfully submitted,

Dated: August 14, 2008

    */s/ David M.C. Peterson*
**DAVID M.C. PETERSON**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Esparza-Gutierrez

N:\Cases\1326 cases\Esparza-Gutierrez\Breach.Misconduct Exh\reply to opp to briefing on posture.wpd

## **CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney via ECF NEF

Copy to Defendant

Dated:  August 14, 2008      /s/ DAVID M. PETERSON
Federal Defenders of San Diego,
225 Broadway, Suite 900
San Diego, CA  92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
david_peterson@fd.org (email)

N:\Cases\1326 cases\Esparza-Gutierrez\Breach.Misconduct Exh\reply to opp to briefing on posture.wpd