ORIGINAL

~~SEALED~~ Ordered unsealed per minutes on 8/22/08.

FILED
AUG 21 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  DAVID M.C. PETERSON
   California State Bar No. 254498
2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
   225 Broadway, Suite 900
3  San Diego, California 92101-5008
   Telephone: (619) 234-8467
4  E-mail: david_peterson@fd.org

5  Attorneys for Mr. Esparza-Gutierrez

UNDER SEAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 08cr0416-LAB |
| Plaintiff, | Date: August 18, 2008 |
| v. | Time: 3:00 p.m. |
| FRANCISCO ESPARZA-GUTIERREZ, | **REPLY TO UNITED STATES' RESPONSE AND OPPOSITION** |
| Defendant. | |

TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY;
      CALEB MASON, ASSISTANT UNITED STATES ATTORNEY.

COMES NOW the accused, Francisco Esparza-Gutierrez, by and through his counsel, David M.C. Peterson and Federal Defenders of San Diego, Inc., and hereby files his reply to the plaintiff's response and opposition to his Motion to Compel Specific Performance and Dismiss Indictment Based On Flagrant Prosecutorial Misconduct. This reply is based upon the files and records of this case, the prior pleading, and the attached memorandum of points and authorities.

//
//
//
//
//

SEALED by Order of
District Judge Larry Alan Burns
Date _____
_____
US District Judge

Ordered Sealed in Court

38w

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

Mr. Esparza-Gutierrez hereby incorporates his statement of facts in his Motion To Compel Performance and Motion To Dismiss the Indictment.

## II.

## ARGUMENT

**A.  There Was A Binding Agreement; It Was Based Upon The Prosecutor's Promise To Charge Bargain To A § 1325.**

The government's response to Mr. Esparza's motion makes clear that several things are factually undisputed: first, there was a binding agreement; second, a § 1325 charge bargain was on the table as a term of that agreement during negotiations. The dispute is whether this undisputed offer was accepted and detrimentally relied upon. It was accepted, and it was detrimentally relied upon. Beyond these undisputed facts, the government spends many pages attempting to "cast doubt" on, alternatively, the existence, terms or enforceability of the agreement. However, the government acknowledges that a binding agreement existed. All that remains is a determination of whether its terms included a charge bargain to § 1325.

**1.  The Government Acknowledges There Was A Binding Agreement.**

The government admits in its pleadings that it "does not contest that Peterson's letter and Mason's response would constitute a binding agreement on the part of the government . . ."[1] Gov't Response at 12. In spite of this admission, the government repeatedly asserts that there was not a binding agreement between the parties. Gov't Response at 5 ("there are four reasons why this Court should not find that there was a plea agreement as defendant alleges"); at 6 ("Defendant has identified no authority supporting his claim that

---

[1] The government seeks to limit the terms of that agreement to the writing. However, the parol evidence rule does not apply. First of all, there is <u>no</u> indication that the agreement was complete or integrated. There is significant indication that it was not. Second, the parol evidence rule does not, and should not, apply in the context of plea agreements. United States v. Garcia, 956 F.2d 41, 44 (4th Cir. 1992) ("Strict application of the parol evidence rule might bar consideration of the cover-letter promise. However, we think that the inequity of the result below illustrates why courts ought not rigidly apply commercial contract law to all disputes concerning plea agreements").

2

a binding plea agreement should be found on the facts of this case"); at 7 ("the evidence that Defendant proffers is apparently without precedent as a basis for a finding that a plea agreement existed"); at 7 ("""Defendant's own evidence is at odds with the claim he now makes about the existence of an agreement"); at 9 ("defense counsel's actions are not consistent with his allegation that there was an agreement"); and at 25 ("Because the evidence fails to show the existence of an agreement, this Court should deny Defendant's motion"). This repeated argument that <u>no</u> agreement existed is without merit and is contradicted by the government's own admission.

2. **The Government Acknowledges That It "Proposed" The § 1325 Charge Bargain That Mr. Esparza Alleges He Accepted; This Admission Undermines Its Argument That The Charge Bargain Was A Counter-Offer.**

It is also undisputed that Mr. Mason did offer a charge bargain to a § 1325 misdemeanor. <u>See</u> Gov't Response, Exhibit A, para 12. Thus, the only question is whether Mr. Esparza accepted it. He did. Nonetheless, the government baselessly asserts that the charge bargain Mr. Esparza relied on in dismissing his appeal was "a counter-offer from Peterson." Gov't Response at 10. This is belied by government counsel's own declaration. Mr. Mason states in his declaration that he "proposed three possible alternative settlements . . . [including, *inter alia*] a plea to illegal entry under § 1325." <u>See</u> Gov't Response, Exh. A, at para 12. Thus, the government's attempt to construe the charge bargain as a counter offer made by defense counsel is incorrect; its own evidence is that the government "proposed" it.

In addition, while government counsel acknowledges that a binding agreement existed, <u>and</u> acknowledges that a charge bargain to a § 1325 was in fact offered by the government during negotiations, the government never once affirmatively states that this charge bargain was not, in fact, a term of the agreement. Instead the government simply argues that Mr. Esparza's evidence of an agreement to the government offer is insufficient as a matter of law.[2] This is disingenuous. The government puts no <u>fact</u>

---

[2] This contradicts the government's role in making and performing plea agreements. <u>Garcia</u>, 956 F.2d at 43 ("the courts have recognized that those rules have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying 'contract' right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. Second, with respect to federal prosecutions, the courts' concerns run even wider than the protection of the defendant's individual constitutional rights—to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government") (internal quotations omitted).

in the record to dispute the claim that this was a term of the plea agreement. The evidence establishes that the charge bargain was a term of the agreement.

3.  **The Agreement For The Government's Proposed Charge Bargain To A § 1325 Is Supported By The Evidence.**

   a.  **The Government Does Not Directly Address The Evidence Provided By Mr. Esparza.**

Mr. Esparza's Motion to Compel[3] provides ample evidence of the terms of the agreement between the parties, which defense counsel reasonably relied upon when he did not oppose the government's Motion for Summary Reversal to the Ninth Circuit. The government argues at length that the evidence adduced of an oral agreement is insufficient. Indeed, at one point it argues that "[i]f there was any further agreement to enter into a 1325 plea bargain, there is no evidence of it." However, the government fails to address or refute the following evidence:

1) The government's admission that Mr. Mason made such a "proposal," i.e., and offer See Mason Declaration at para. 12. ("I proposed three possible alternative settlements: . . . [including] a plea to illegal entry under § 1325");
2) A detailed declaration by defense counsel that includes the precise dates and order of conversations that occurred regarding this acknowledged offer;
3) Declarations by three attorneys who were informed of the agreement and advised defense counsel as to whether to accept the offer or not;
4) Contemporaneous notes of defense counsel stating, inter alia, that
   (a) although the government "won't concede breach. . . ." they "will offer 1325 misdo, in lieu of 10-16,"
   (b) thereafter government counsel stated that he "wants to go ahead as discussed;" and
   (c) counsel acted on the agreement that "they submit mtn for summary reversal and remand for resentencing. then they will move to set aside gp, we will move to w/draw, then will get 1325 misdo and stat cap burns at six months";
5) An unintegrated and incomplete agreement that is evidence of the entire agreement, and which is corroborated by all of the above parol evidence;
6) Common sense. There is no reason— other than the § 1325 charge bargain—that defense counsel would agree to drop or delay for months two issues on appeal in exchange for the opportunity to withdraw from a beneficial plea agreement.

See Motion to Compel, Exhs A, B, C, D, Exh. E, Entries of June 18, 2008; June 23, 2008 and June 26, 2008; Exhs F & G.

   b.  **The Affidavit Of Mr. Mason—The Sole Evidence Presented By The Government—Is Unreliable Because It Is Uncorroborated And Solely The Product Of Government Counsel's Memory.**

In its response and attached declaration, government counsel makes no affirmative claim that this agreement did not exist. Indeed, all Mr. Mason's declaration states is that in a July 27 conversation with

---

[3] Filed under seal July 29, 2008.

4

defense counsel, he stated that "I told [defense counsel] that I [Caleb Mason] did not remember such an agreement and asked him where it was memorialized." Government counsel's sworn lack of memory is not evidence.[4] Aside from government counsel's lack of memory, the other evidence provided by the government to undermine the above evidence consists of: an affidavit by Mr. Mason, unsupported by any dates of the alleged conversations, any case notes by Mr. Mason, or any affidavits of individuals who had contemporaneous conversations with him.

The conversations alleged by Mr. Mason appear not to have been recorded by him or summarized in any written format, either contemporaneously or thereafter. Therefore, the government is relying solely on one individual's memory.[5]

This lack of notes or any other corroborating evidence by the government is particularly important because Mr. Mason must now rely on his memory of when particular conversations occurred and what was stated. In turn, his memory is contradicted by the contemporaneous notes provided by defense counsel. These contemporaneous notes make implausible the government's assertions regarding both the timing and the order of certain crucial conversations. Specifically, Mr. Mason's declaration asserts that the conversations about the <u>substance</u> of the relief granted to Mr. Esparza on remand occurred at the same time as discussions about what <u>procedure</u> the parties would follow to effectuate remand. In paragraph 12 of his declaration Mr. Mason asserts that (on some unknown day) he made three proposed settlements. He then states in the next paragraph that (on some unknown day) these three settlements were "categorically" rejected by defense counsel. Both claims are belied by counsel's memory, his contemporaneous notes, and the fact that Mr. Esparza gave up his appeal.

Defense counsel's notes indicate that the government made the offers described by Mr. Mason over the course of two days. On June 17, government counsel made offers #1 and #2. First, Mr. Mason made an offer to negotiate a new agreement from square one. <u>Motion to Compel</u>, Exhibit E, Entry of 6/17/2008. The note stating that "six months wld be range, six mos custody" indicates that offer #2, for a § 1001 false

---

[4] <u>See</u>, <u>e.g.</u>, Fed. R. Evid. 804(a)(3) (declarant is unavailable to provide evidence or subject himself to cross "if he testifies to a lack of memory of the subject matter of the declarant's statement."

[5] If there are written notes made by government counsel, the government has determined that they are not relevant or not persuasive of its argument that there was no agreement.

statement charge bargain was also made on this day. Id. The last line of Exhibit E, Entry of June 17, says that Mr. Mason "wants to know." Id. The last words of the June 17, 2008 entry corroborate defense counsel's memory indicate that these two offers were by telephone message. Defense counsel's contemporaneous notes then indicate several phone calls between himself and government counsel on the following day, June 18. Id., Entry of 6/18/2008. The notes covering those phone calls describe offer #3: "won't concede breach, therefore no remand to different judge. But will offer 1325 misdo, in lieu of 10-16 or 6-10." Id.

Defense counsel's notes then provide evidence of the acceptance that defense counsel in no uncertain terms remembers communicating. On June 23, Mr. Mason called and said that he "wants to go ahead as discussed." Id., entry of June 23. This contemporaneous description strongly indicates that an agreement had, as defense counsel remembers, already been reached; the prior entry indicates what was in fact accepted: "1325 misdo, in lieu of 10-16 or 6-10."[6]

Defense counsel's notes from June 23 further indicate that six days after the discussions began and five days after the ensuing agreement on the substance of the agreement, there was a second set of discussions about the appropriate procedural means of effectuating the substantive agreement already made. See id. "[Mr. Mason] wants me to draw up voluntary dismissal of appeal. wants to go ahead as discussed." This note undermines Mr. Mason's memory that the procedure and substance were part and parcel in a single set of negotiations. The contemporaneous notes confirm what defense counsel remembers: an agreement on the substance, followed by an agreement as to the procedure by which to effectuate the substantive agreement that was confirmed with and undisputed by government counsel. As of June 23, Mr. Mason first began a conversation with counsel about the procedure the parties would follow to effectuate the substantive agreement which would "go ahead as discussed." Id. Three days later, defense counsel's notes indicate a disagreement as to the procedural means by which the substantive agreement already entered into would be entered into. See Motion to Compel, Exh. E, Entry of 6/26/2008. Mr. Mason's first procedural offer ("his st[arting] offer," Id.) was that Mr. Esparza voluntarily dismiss the appeal. The "second offer" regarding the procedure was made by defense counsel. It was that "they submit mtn for

---

[6] "Misdo" is a commonly used abbreviation for misdemeanor among members of the criminal defense bar.

6

summary reversal and remand for resentencing." Id. The notes indicate that there was still no disagreement regarding the substance of the relief agreed to ("they will move to set aside gp, we will move to w/draw, then will get 1325 misdo" Id.), the parties simply were having some trouble on how best to procedurally effectuate the agreement. Defense counsel's notes unequivocally indicate that the government's memory that the substance and the procedure were part and parcel of the same conversations is mistaken.[7]

Memory is imperfect. Indeed, when defense counsel called government counsel on July 24 seeking performance of the agreement, government counsel did not even remember any letter being sent. While defense counsel did incorrectly remember the content of that particular letter, dutifully noted by government counsel, what government counsel fails to note in his affidavit and briefing is that he did not even remember receiving a letter.[8] While the memory of both attorneys is clearly subject to error and lapse, defense counsel has contemporaneous notes confirming his version and refreshing his recollection. Government counsel either has no notes of these conversations or has deemed that they are not evidence backing up his factual assertions in his motions.[9]

The facts are clear, and clearly corroborated by defense counsel's evidence: (1) there was a binding agreement, see Gov't Response at 12, fn 1; (2) there was an offer by the government to charge bargain to a 1325 on remand, see Gov't Response, Exhibit A, para 12; Mr. Esparza's Motion to Compel, Exhibit E; and (3) that agreement was accepted and the government indicated it would "go ahead as discussed." See Motion to Compel, Exhibit E, June 23 entry. The later disagreements regarding the procedural means were

---

[7] This is perhaps due to a lack of memory on Mr. Mason's part. Defense counsel has indeed had to rely on his notes to refresh his recollection of the timing of the various conversations between himself and government counsel.

[8] In spite of the fact that he responded in writing to that letter. See Motion to Compel, Exh. G.

[9] Beyond the unbacked assertions regarding the timing of the various negotiations, which are belied by defense counsel's contemporaneous notes, the government attempts to "cast doubt" on defense counsel's evidence. See Gov't Response at 7 ("the government addresses below the plausibility of Defendant's account, and argues that Defendant's own evidence is at odds with the claim he now makes about the existence of an agreement"); at 24 ("Peterson's failure to take any of these steps calls into doubt the existence of an agreement"). This is not a criminal trial, this Court is not a jury, and Mr. Mason does not represent the defendant. His job is not to cast doubt; it is "to do justice." See Mason Declaration at para 5. See also Berger, 295 U.S. 78 (1935) (prosecutor's duty is not simply to win a case but "that justice shall be done").

ultimately resolved. As to the initial agreement, their timing demonstrates that they are irrelevant to the fact that there was an agreement to a § 1325 charge bargain; Mr. Esparza relied on it; and the government has now repudiated it.

**4.     There Are Two Explanations For Why The Full Terms Of The Agreement Were Not In The June 26 Letter To Mr. Mason.**

The government accurately notes what defense counsel has unequivocally acknowledged from the beginning: the agreement to charge bargain to a § 1325 misdemeanor was not reduced to a written plea agreement. However, the government states that "[i]t is difficult to find an explanation for Peterson's actions consistent with his allegations of the existence of such an agreement." Gov't Response at 16. There are two explanations.

First, defense counsel was in trial during the period in which the written (not oral) communications between counsel occurred. Indeed, Mr. Mason was aware of this at the time, and encouraged haste on defense counsel's part. See Motion to Compel, Exh. G. In response to both a telephonic message and a letter from defense counsel regarding the appellate procedure by which the agreement was to be effectuated, Mr. Mason responded by email saying: "I know you're in trial, but multitask." See Motion to Compel, Exhibit G. While it is unfortunate that the agreement was not memorialized, defense counsel's haste in writing a letter describing the procedural aspect of the agreement is, candidly, in part based upon the fact that he was in trial. He therefore did not, as government counsel baselessly asserts, have "ample opportunity to memorialize the agreement he now claims exists."[10] Indeed, government counsel knew that defense counsel was in trial and acknowledged it at the time.

Second, defense counsel did not memorialize the plea agreement made between himself and Mr. Mason because there was no doubt in defense counsel's mind, at the time, that Mr. Mason was honor bound by his promise and there was no doubt that the government's portion of the agreement would be effectuated upon completion of Mr. Esparza's end of the deal.

---

[10] Again, the requirement of a written plea agreement is not subject to dispute as a question of law. Brown, 337 F.3d at 1160 ("the terms of oral plea agreements are enforceable, as are those of any other contracts. . .").

8

Defense counsel's belief and naivete was such that the written memo to Mr. Mason only sought to memorialize the procedural aspects of the case as to which there had been some disagreement. Such was defense counsel's trust that the memo creating a paper trail did not touch on the substantive remedy that the parties had already agreed to; defense counsel mistakenly believed that the government would abide by the undisputed substantive portion of the agreement.[11] It is clear that the written letter was a description of how defense counsel believed the procedural manner was to effectuate the substantive terms of the agreement, and therefore did not address the substantive terms directly. Counsel did not create a contract with the June 26 letter because a contract already existed. Nor did defense counsel memorialize the contract with that letter; he simply stated his understanding of how the agreement would be effectuated.

**B.     The Agreement Is Enforceable As A Matter Of Law.**

The government proffers several reasons why the Court should not find that the plea agreement alleged by Mr. Esparza is unenforceable. Each is incorrect, and is unsupported by a single precedential case.

   **1.     Contary to the Government's Unprecedented Assertion, Oral Plea Agreements are Enforceable, Where There Is Detrimental Reliance.**

The government first states that because there is not a written memorialization of the agreement, making it legally insufficient. This is incorrect as a matter of law. See Brown v. Poole, 337 F.3d 1155, 1160 (9th Cir. 2003) ("the terms of oral plea agreements are enforceable, as are those of any other contracts. . ."). Rather than address any of the cases discussed in Mr. Esparza's Motion to Compel, and instead of referring to any case law, the government simply states that it found "no case even approaching the facts alleged here." See Response and Opposition, at 6. To make this claim, it must willfully ignore the cases cited by Mr. Esparza in his Motion to Compel. See Brown, 337 F.3d at 1160; United States v. Savage, 978 F.2d 1136 (9th Cir. 1992); McKenzie v. Risley, 801 F.2d 1519, 1527 (9th Cir. 1986), vacated in part on other grounds, 842 F.2d 1525 (9th Cir. 1986); United States v. Garcia, 956 F.2d 41 (4th Cir. 1992); Williams v. Spitzer, 246 F.Supp.2d 368 (S.D.N.Y. 2003)

---

[11] As is clear from the face of the letter, it did not integrate the entire substantive agreement, nor did it purport to integrate the entire substantive agreement.

9

As an initial matter, the binding precedent of this circuit speaks clearly for the general proposition that oral plea agreements are enforceable where there is detrimental reliance. In <u>Brown</u>, 337 F.3d at 1160, 1162, the Ninth Circuit held that the government's breach of an oral agreement that called for defendant's release after seven-and-one-half years with no infractions in prison was enforceable. This was in spite of the oral nature of the plea agreement. Specifically, the Ninth Circuit held that "the terms of oral plea agreements are enforceable, as are those of any other contracts, even though oral plea agreements are not encouraged by reviewing courts." However, the proposition made crystal clear in <u>Brown</u>—that an oral plea agreement is enforceable if there is detrimental reliance by the defendant—is not novel to <u>Brown</u>. See also <u>United States v. Savage</u>, 978 F.2d 1136 (9th Cir. 1992) ("[e]ven if the agreement has not been finalized by the court, 'a defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding") (quoting <u>McKenzie v. Risley</u>, 801 F.2d 1519, 1527 (9th Cir. 1986), <u>vacated in part on other grounds</u>, 842 F.2d 1525 (9th Cir.), <u>cert denied</u>, 488 U.S. 901 (1988).

The government absurdly claims that its "ALLFEDS Westlaw database" search for "oral plea agreement" did not contain a case with the precise factual scenario of this case. While it may be that the extremely limited search mentioned by the government turns up no cases with the precise factual scenario presented here,[12] the government should have begun its response to Mr. Esparza's motion by reading the cases cited by Mr. Esparza in his motion. Persuasive case law cited by Mr. Esparza stands for the <u>precise</u> proposition that plea agreements need not be made either in written form or "on the record in open court." <u>Cf.</u> Gov't Resp. at 6. On page 9 of Mr. Esparza's Motion to Compel, he cites <u>Williams v. Spitzer</u>, 246 F.Supp.2d 368 (S.D.N.Y. 2003) (alleged "off-the-record," "oral" promise by state prosecutor was an enforceable plea agreement). Specifically, Mr. Esparza cited the following passage, which the government completely ignores:

> But the Court's language in <u>Santobello</u> is crystal clear and broadly stated: "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecuto, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." <u>Must be fulfilled!</u> The Court did not add "unless the promise was oral," or "unless the prosecutor had his fingers crossed behind his back."

---

[12] Defense counsel suggests the following searches: (oral /s plea agreement); (unwritten /s plea agreement); (verbal /s plea agreement); ("not reduced to writing" /s plea agreement). In addition, the following ALLFEDS Search brings defense counsel to numerous cases including the <u>Williams</u> case cited in the Motion to Compel: ("off-the-record" /s prosecutor! /s promise).

Williams, 246 F.Supp.2d at 382-83 (citing Santobello) (emphasis in original).

This quote is not the only applicable aspect of Williams. The case was strikingly similar on the relevant facts. The district court noted that certain "assurances and reassurances [made to defendant] were oral. They were neither memorialized nor mentioned in any writing. Petitioner does not contend otherwise" (emphasis added). In Williams, the defendant "on the basis of the asserted post-plea, off-the-record promise given by state prosecutors to secure [the defendant's] continued cooperation, moved in the state trial court prior to sentencing for dismissal of the indictment in the interest of justice, or in the alternative, for an order permitting him to withdraw his guilty plea" (emphasis added). The court held that an "evidentiary hearing is necessary to resolve this controlling issue of fact." Id. While the state court had previously held that an unwritten, off-the-record promise was unenforceable as a matter of law, the reviewing district court judge held as follows:

> Accordingly, I conclude that if the state prosecutors gave petitioner Trumont Williams the promises and assurances he alleges, petitioner's constitutional right to due process was violated, and he is entitled to appropriate relief.

Id. at 383. While the Williams case is not binding precedent, it belies the government's unbacked assertion that no case holds that unwritten, off-the-record promises may be enforceable plea agreements.

But this persuasive authority is not necessary to determine the answer to the principle of law asserted by the government.[13] Binding precedent clearly dictates the answer: oral plea agreements are enforceable in the Ninth Circuit. In Brown the court held that "the terms of oral plea agreements are enforceable, as are those of any other contracts." In Brown, there happened to be evidence of the plea agreement on the record. Brown, 337 F.3d at 1160. In fact, the Ninth Circuit did not deem that the on-the-record evidence was a requirement for an enforceable agreement. Rather, they held it to be conclusive proof of the agreement. The court found (1) plea agreement and (2) a breach "as a matter of law," Id. at 1160, fn 2. The fact that the agreement was on the record made factual findings unnecessary ("Given the plain terms of the contract, the state court's factual inquiry into parol evidence here is unnecessary and inappropriate"). The language in Brown makes clear that statements on the record are conclusive proof of an agreement; in no way does the language of Brown hold or imply that absent that conclusive proof the agreement is not enforceable.

---

[13] Without a single cite to a case that remotely supports the proposition asserted by the government.

Moreover, in United States v. Garcia, 956 F.2d 41 (4th Cir. 1992), the Fourth Circuit explained that even where parol evidence might otherwise be barred, it is admissible in the criminal law context of a negotiated plea agreement. It cited at length the reasons for so holding:

> In the process of determining whether disputed plea agreements have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts. But the courts have recognized that those rules have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. Second, with respect to federal prosecutions, the courts' concerns run even wider than the protection of the defendant's individual constitutional rights—to concerns for the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government.

Id. at 43 (citation omitted) (emphasis added).

The single case cited by the government in support of its argument that a plea agreement must be either written or on the record to be enforceable holds no such thing. United States v. Sharp, 941 F.2d 811 (9th Cir. 1992). In Sharp, the Ninth Circuit held that an oral plea agreement had not been breached where there was no evidence of the promise alleged by the defendant. Id. at 816. There, neither "petitioner nor his counsel disputed the government's description of the plea agreement at the time; therefore, this claim [of breach] also fails." Thus, in Sharp, there was an oral plea agreement made on the record, and it was binding. The court did not hold—or even state in dicta—that it was necessary for an oral promise to be enforceable it had to be on the record. It simply held that a particular promise was required before the government could breach that promise. Id.

### 2. Defense Counsel, Acting As Agent, Entered Into An Agreement Which Bound Mr. Esparza; That Constitutes Detrimental Reliance.

The government's second assertion is that the actions of defense counsel acting as Mr. Esparza's agent cannot as a matter of law be detrimental reliance sufficient to create an enforceable contract. This is also incorrect and unbacked.

The facts underlying defense counsel's express authority to accept an offer on behalf of Mr. Esparza are as follows. They are put in general terms so as not to compromise attorney-client privileged communications to any extent greater than necessary: On about June 1, 2008, defense counsel indicated to Mr. Esparza that the appeal filed had merit, but that the government was interested in negotiating a settlement rather than going forward with an appeal. Defense counsel sought and received broad latitude

to negotiate a settlement that was beneficial; specifically, defense counsel told Mr. Esparza that he would attempt to negotiate a settlement that achieved the goal of less custodial time than the nine-month custodial and five-year probationary sentence imposed by this Court. Mr. Esparza consented to allow defense counsel to engage in negotiations and accept a settlement that was beneficial to him. This conversation granted defense counsel the authority to enter into an agreement and bind Mr. Esparza-Gutierrez by that agreement.

It is well established that an attorney is a client's agent, and the client is "bound by the acts of his attorney-agent, if his attorney has actual or apparent authority to bind him." Blanton v. Womancare, 38 Cal.3d 396, 403 (1985). Here, Mr. Esparza gave defense counsel express authority to enter into a settlement agreement that was beneficial to him. The authority was not apparent, it was actual and express. Defense counsel did so; Mr. Esparza's reliance on the actions of defense counsel is apparent, it is detrimental, and it is authorized by the law of contract and agency.

The government again cites to only a single case for the proposition that an attorney cannot enter into a post-appeal agreement based upon previous authority by the defendant. Once again the case holds no such thing. The government states in its response that the "Seventh Circuit recently declined on similar facts to find that an oral agreement existed." See Gov't Response at 7. The Seventh Circuit's sole holding in the habeas case cited by counsel, with respect to breach of an oral agreement was that:

> There is one final point we must address. Coleman attempts to manufacture an argument concerning an alleged breach of the plea agreement by the government. He contends that this breach resulted in an involuntary plea. This issue is not before this court. Coleman never raised the issue on direct appeal and thus his argument is procedurally defaulted. A § 2255 motion is not a substitute for a direct appeal.

Coleman v. United States, 318 F.3d 754, 760 (7th Cir. 2003) (emphasis added). It is impossible to claim that the Seventh Circuit in any sense "declined on similar facts to find that an oral agreement existed." What actually happened was that the Seventh Circuit declined to reach an issue that was "not before th[e] court." Id. After insinuating that this was a holding that could be applied to the instant case in some principled manner, the government continues its misrepresentation by citing a one-judge concurrence, as if it were a discussion of an issue actually before the court.[14]

---

[14] The concurrence written by one judge (and therefore not agreed with by the other judges) briefly discusses Boykin v. Alabama, 395 U.S. 238, 243 (1969) for the proposition that a guilty plea at the trial level must be entered into knowingly and voluntarily. Boykin is inappropriate in the determination of the Due Process right denied Mr. Esparza by the government's breach of a post-sentence negotiated agreement.

13

Additionally, there is a guiding principle in this very circuit on this issue. The Ninth Circuit has specifically stated that the subjective intent of the defendant is irrelevant to a determination of detrimental reliance on an oral plea agreement. In <u>Brown</u>, the majority specifically rejected the dissent's proposition that extrinsic evidence of defendant's subjective understanding of a plea agreement was properly at issue where breach was alleged. <u>Brown</u>, 337 F.3d at 1160. The question in <u>Brown</u> was twofold: (1) did the prosecutor make a promise? and (2) did the defendant detrimentally rely on that promise? The court in <u>Brown</u> answered both questions in the affirmative, and explicitly rejected any questioning of the defendant's subjective intent. The question of detrimental reliance is an objective one. <u>Brown</u>, 337 F.3d at 1160. Was Mr. Esparza's reliance objectively reasonable? Here, Mr. Esparza granted his attorney broad latitude in negotiating a post-sentencing settlement that put him in a better position. His attorney achieved that goal by receiving a promise from the prosecutor for a charge bargain that placed a statutory cap on his sentence three months below the existing sentence. As Mr. Esparza's agent, undersigned counsel reasonably acted affirmatively, and unfortunately to Mr. Esparza's detriment, by relying on the government's promise of a § 1325 charge bargain. That is an enforceable contract.

**6.     The Government's Representations As To What Would Have Happened On Appeal Have No Basis.**

As a final argument, the government argues that even if there was a binding agreement, Mr. Esparza's filing of his non-opposition to the government's Motion for Summary Reversal and Remand was not to his detriment.[15] Government counsel bases this on (1) an assertion as to what the Ninth Circuit would have done on remand explicitly contradicted by binding Ninth Circuit cases; and (2) defense counsel's interest in receiving a speedy resolution. Each is addressed in turn.

First, the government claims that the "breach claim simply would not have been decided in the initial litigation, because it was an issue that the [appellate] court need not, and could not, reach." <u>Gov't Response</u> at 19. This is incorrect as a matter of law. See <u>United States v. Allen</u>, 434 F.3d 1166 (9th Cir. 2006) (reaching the issue of breach, deciding against the defendant, then remanding for resentencing on an unrelated issue). In this case, before remanding (guaranteed by this Court's <u>Forbes</u> error), the court would

---

[15] Government counsel again cites no cases for this "legal" assertion.

14

necessarily have had to decide the breach issue. Case law (something the government cares not to cite in support of its argument) clearly demonstrates that where there is a breach issue, it must be addressed by a reviewing court before remanding for "re-sentencing." Allen, 434 F.3d 1166.

Next, the government counsel meanders through various interests of Mr. Esparza's it believes have been achieved, limiting or negating Mr. Esparza's interest in litigation of his triad of appellate issues. While the thought the government has put into in Mr. Esparza's interest is appreciated, it is misguided. This is probably because the government is not the steward of Mr. Esparza's interests; they are an opposing party. Garcia-Aguilar v. U.S. District Court for Southern Dist. of California, --- F.3d ----, 2008 WL 3009680 (9th Cir. 2008).[16] The government's arguments simply ignore the fact that Mr. Esparza's appeal on the breach issue has now been delayed by months. These are months spent in custody. Mr. Esparza has lost—or delayed for months—the chief remedy he sought on appeal.

Further, the government argues that defense counsel "repeatedly told counsel for the government that his client's primary interest was in getting a quick remand." In keeping with all of his claims, government counsel provides, no support, i.e., no notes, of his stating that these were undersigned counsel's words. Moreover, undersigned counsel disagrees with such a quote being attributed to him. Finally, undersigned counsel does not agree that a quick remand is or ever was Mr. Esparza's "primary interest."[17]

Mr. Esparza's "primary interest" was and remains receiving a custodial term that was less than the nine months imposed by this Court. This is made clear in the case notes submitted to the court as evidence of the contract. The statutory cap was the sole reason for agreeing to the remand. Absent the agreed upon relief on remand, Mr. Esparza has lost valuable months on an appeal that he still intends to litigate and win. Those months very well may be spent in custody, due to the government's breach. It is hard to imagine reliance more detrimental than waiving, for months and perhaps forever, an appeal that could beacon a quicker release from imprisonment.

---

[16] "the ten most terrifying words in the English language may be, 'I'm from the government and I'm here to help you.'"

[17] Indeed, it was the government that brought up the idea of negotiation on appeal; it was government counsel that called defense thereafter making proposals for a negotiated settlement; and it was government counsel that, while defense counsel was in trial, was in such a hurry to achieve a resolution that he stated in an email to defense counsel "I know you're in trial, but multitask." See Motion to Dismiss, Exh. G.

15

III.

CONCLUSION

For these and all the foregoing reasons, the defendant, Mr. Esparza-Gutierrez, respectfully requests that this Court grant his motions and grant any and all other relief deemed proper and fair.

Respectfully submitted,

Dated: August 15, 2008

DAVID M.C. PETERSON
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Esparza-Gutierrez

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney

Copy to Defendant

Dated:  August 15, 2008

Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA  92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
david_peterson@fd.org (email)